STATE OF CONNECTICUT *v.* DANIEL J. OUELLETTE
(AC 27531)

Gruendel, Lavine and Mihalakos, Js.

---

[7] We note that the court decided the motion as a matter of law and, therefore, did not need to consider any factual issues.

Argued April 28—officially released September 23, 2008

*Richard A. Reeve,* special public defender, with whom, on the brief, were *Michael O. Sheehan, Cyd O. Oppenheimer* and *George G. Kouros,* special public defenders, for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy,* state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Daniel J. Ouellette, appeals from the judgments of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (3), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3), conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-48 and 53a-123 (a) (3), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), larceny in the fifth degree in violation of General Statutes § 53a-125a, and conspiracy to commit larceny in the fifth degree in violation of General Statutes §§ 53a-48 and 53a-125a. On appeal, the defendant claims that the court improperly (1) consolidated two cases pending against him, (2) charged the jury, (3) denied his motion for a new trial and (4) deprived him of his constitutional rights to due process and to a fair trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On August 14, 2004, the victim, Carmela Interligi, was loading groceries into her car when she was approached by Pamela Levesque. Levesque produced

a knife and demanded the victim's purse. Although the victim resisted and suffered two cuts to her fingers, Levesque was able to reach inside the purse and remove the victim's wallet. Levesque then fled to a nearby 1986 Chevrolet Monte Carlo, which was being operated by the defendant. She and the defendant then left the scene by car.

Shortly after the robbery, the defendant drove to the Wal-Mart store on Farmington Avenue in Bristol. Casey Keil, a loss prevention associate at Wal-Mart, observed the defendant stop in front of the store and Levesque exit the car and place a single credit card into her rear pocket. This conduct aroused Keil's suspicions, and he followed her into the store, where she proceeded directly to the photography department and quickly chose a Sony camcorder. As Keil was observing Levesque, another Wal-Mart employee alerted him that the defendant had entered the store. Keil observed the defendant covertly watching Levesque purchase the camcorder, and, as Levesque completed the transaction, Keil observed the defendant heading toward the store's exit.

Keil went to the cash register and compared the signature on the credit card slip with the name of the cardholder and, finding that they did not match, stopped Levesque to inquire further. Levesque stated that the credit card belonged to a relative. Keil escorted her to a back office, and another associate determined that the credit card was stolen.

Keil then went outside and located the defendant in a parked car, with the engine running. Upon Keil's request, the defendant accompanied Keil back into the store, where the Bristol police department was summoned. The victim thereafter identified Levesque as the person responsible for stealing her wallet and assaulting

her. The police discovered the victim's wallet in the car that the defendant was operating.

The defendant thereafter was arrested and charged in two separate long form informations. One charged the defendant with crimes relating to the robbery of the victim. The other charged the defendant with crimes relating to the use of her stolen credit card. On the state's motion, the court consolidated the defendant's cases. Subsequently, the matter was tried to the jury, and the defendant was found guilty on all charges. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly consolidated the two cases pending against him. Specifically, he argues that the cases should not have been consolidated because (1) the brutal and shocking nature of one of the charges pending against him unfairly prejudiced him and (2) evidence admitted in the consolidated trial would have been inadmissible in separate trials. Our review of the record, however, reveals that the defendant failed to raise these issues at trial.

The following additional facts are relevant to the defendant's claim. At trial, the state moved to consolidate the cases pending against the defendant, arguing that the facts of the defendant's cases favored joinder. The defendant objected to the consolidation, arguing that "it would be inherently prejudicial to consolidate these two cases for the very reason that if a jury were teetering on the edge of reasonable doubt on . . . the robbery, the fact that he may merely have been present in the [larceny] may militate or convince [the jury] to convict for the first case."

The defendant continued, "I know the state [is] alleging that [it is] a continuing course of conduct, but they

are two separate and distinct crimes, and if they're tried together the jury may confuse the case of the Wal-Mart and believe that that—the evidence or, if there's guilt beyond a reasonable doubt in that case, that that would simply be enough to convict him of the first case without maybe carefully examining the case or if reasonable doubt does exist. I realize that . . . judicial economy is important, but in this instance I think that because they're so—they are distinct, and because an inference may be drawn simply from the second case to the first case I think [that] will inherently and unduly prejudice [the defendant]." The defendant thereafter offered no further grounds for his objection to consolidating the cases pending against him.

Our law regarding joinder is well established. "General Statutes § 54-57 and Practice Book § 829 [now § 41-19] expressly authorize a trial court to order a defendant to be tried jointly on charges arising separately. In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . *The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice and that any resulting prejudice was beyond the curative power of the court's instructions.* . . . [W]hether a joint trial will be substantially prejudicial to the rights of the defendant . . . means something more than that a joint trial will be less advantageous to the defendant. . . .

"Furthermore, we have identified several factors that a trial court should consider . . . . These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must

decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Emphasis in original; internal quotation marks omitted.) *State* v. *Davis*, 98 Conn. App. 608, 615–17, 911 A.2d 753 (2006), aff'd, 286 Conn. 17, 942 A.2d 373 (2008).

Here, the defendant objected at trial to consolidation on the ground that the charges did not involve discrete, easily distinguishable factual scenarios.[1] On appeal, however, he sets forth a different theory as to why consolidation was improper, namely, that the brutal and shocking nature of one of the charges pending against him was unfairly prejudicial and that evidence admitted in the consolidated trial would not have been admissible in separate trials.[2] "This court reviews rulings solely on the ground on which the party's objection is based." (Internal quotation marks omitted.) *State* v. *Wegman*, 70 Conn. App. 171, 189 n.9, 798 A.2d 454, cert. denied, 261 Conn. 918, 806 A.2d 1058 (2002). "[W]e have consistently declined to review claims based on a ground different from that raised in the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Gebhardt*, 83 Conn. App. 772, 778, 851 A.2d 391 (2004). Because he did not raise his current claim at trial, we are not bound to review it on appeal.

## II

The defendant's second claim is that he was deprived of his federal constitutional right to due process and to a fair trial because the state improperly withheld

---

[1] Because he has not raised or briefed this argument on appeal, we deem this claim abandoned. See *State* v. *Sawyer*, 279 Conn. 331, 342 n.11, 904 A.2d 101 (2006) (claims on appeal inadequately briefed are deemed abandoned).

[2] We note also that the state, in arguing to the trial court that the cases against the defendant should be consolidated, took the position that evidence from the larceny case would be admissible in the robbery case to show a pattern of criminal conduct by the defendant and to establish his identity as the perpetrator of the crime. The defendant did not rebut this argument at trial but, instead, has attempted to raise it on appeal.

exculpatory evidence regarding the credibility of Levesque. Specifically, he asserts that the prosecutor represented to the court and to the jury that its plea agreement with Levesque called for the state to recommend the maximum sentence allowable, which the defendant claims the state subsequently failed to do. He argues, consequently, that the jury was unable to judge properly Levesque's credibility because it did not understand the true nature of the state's relationship with her. We are not persuaded.

The following additional facts are relevant to the defendant's claim. At the defendant's trial on November 7, 2005, Levesque testified as a witness for the state. She testified that she had reached a plea agreement with the state, and, as part of her agreement, the state would recommend that she receive a sentence of twenty years incarceration, suspended after ten years, followed by five years probation.[3] Moreover, the sentencing judge would be informed of her cooperation with the state if she testified truthfully in the defendant's case. In its closing argument, the state commented on this testimony and reiterated that "the state *is going to recommend* that [Levesque] receive a sentence of ten years to serve followed by five years probation." (Emphasis added.)

After the defendant had been found guilty and Levesque had been sentenced,[4] the defendant filed a motion for rectification and enlargement of the record. His motion sought to have the record enlarged to include transcripts of Levesque's plea proceeding and sentencing hearing and requested an evidentiary hearing pursuant to *State* v. *Floyd*, 253 Conn. 700, 756 A.2d 799 (2000), to determine whether the state "through its questions

---

[3] On April 19, 2005, Levesque pleaded guilty to one count of robbery in the first degree for her involvement in the robbery of the victim.

[4] Levesque was sentenced on February 10, 2006.

and statements, knowingly presented testimony that was misleading as to the true nature of Ms. Levesque's plea arrangement and sentencing expectations." The court granted the defendant's request to enlarge the record to include the transcripts of Levesque's plea proceeding and her sentencing hearing but denied his request to conduct an evidentiary hearing.

Although the defendant requested an evidentiary hearing, he did not allege that the state withheld exculpatory evidence. Accordingly, he did not raise this claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] Despite the denial of his request for an evidentiary hearing, the defendant argues that the record nevertheless is sufficient for our review of his claim. A central part of that record is the court's denial in part of his motion for rectification and enlargement of the record, in which the court addressed the claim now before us.[6] In its memorandum of decision, the court concluded that "the state's attorney effectively relayed to [the trial court] the recommendation of the state by referring to the

[5] Under *Golding*, a defendant can, on appeal, prevail on a constitutional claim of error when the claim was not raised in the trial court only if all of the following conditions are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

[6] The defendant seemingly is seeking another bite at this apple. On February 13, 2007, he filed a motion for rectification or enlargement of the record. The court granted the defendant's request to enlarge the record to include the transcripts of Levesque's plea proceeding and her sentencing proceeding but denied his request to conduct an evidentiary hearing. The defendant then filed with this court a motion for review of the court's denial of his request to conduct an evidentiary hearing. By order dated May 30, 2007, this court granted review but denied the relief requested, apparently determining that the trial court did not abuse its discretion in denying the motion in part and that the requested evidentiary hearing was unnecessary.

'cap' of twenty years suspended after ten years. He did not state to [Levesque's sentencing court] that a lesser sentence should be imposed. . . . The fact that the state's attorney did not use the specific words, 'I recommend,' does not change the court's conclusion."

On the basis of our review of the record, we conclude that there is no evidence that the prosecution improperly withheld exculpatory evidence regarding the credibility of Levesque. See *State* v. *Floyd*, supra, 253 Conn. 737. We find it disturbing, however, that the state represented in very definite terms that it was going to make a sentence recommendation but then only relayed that recommendation to Levesque's sentencing court by referring to the cap of twenty years suspended after ten. Although the state's tactics seem questionable, the defendant has not established that a constitutional violation clearly exists and clearly deprived him of a fair trial. Accordingly, his claim fails under *Golding*'s third prong.

We do believe it prudent, however, to note the potential for abuse, whether wilful or inadvertent, that is presented whenever a witness testifies prior to being sentenced. When a witness has been offered inducements for his testimony, whether express or implied, the exact terms and nature of the agreement, as understood by the witness, should be borne by the record. This especially includes those situations in which a witness has received only tentative consideration in exchange for his testimony, such as a promise to make a sentence recommendation. Because the tentative nature of such an agreement provides a greater incentive for the witness to offer testimony that is pleasing to the promisor to ensure that the tentative promise will be fulfilled, a thorough understanding of the witness' motives for testifying is necessary. See *Boone* v. *Paderick*, 541 F.2d 447, 451 (4th Cir. 1976), cert. denied, 430 U.S. 959, 97 S. Ct. 1610, 51 L. Ed. 2d 811 (1977). Whatever

the inducement for a witness' testimony, however, counsel should be afforded great leeway to inquire into the motives of a witness so that a proper record can be preserved. Counsel should also be permitted to bring to the jury's attention, in appropriate ways, the possibility that the sentencing judge could decide to impose a more favorable sentence than the one to which the parties originally agreed.

Moreover, at a party's request, the record should ordinarily be expanded to include the circumstances in which the witness' ultimate sentence was entered by the court. Although the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice"; (internal quotation marks omitted) *Giglio* v. *United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); intervening events may offer a benign explanation for a sentence to enter that is different from that originally represented to the jury. It is only on a complete record, however, that such determinations can be made. In the present case, we are satisfied that there is no evidence that the prosecution improperly withheld exculpatory evidence regarding the credibility of Levesque and, accordingly, conclude that the defendant was not deprived of his federal constitutional rights.

### III

The defendant's third claim is that that court improperly charged the jury. Specifically, he claims that the court (1) improperly gave a "number of witnesses instruction" and (2) improperly instructed that the state seeks the conviction only of the guilty. We do not agree.

The defendant did not raise his claim at trial and now seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[7] Although the defendant has the burden

---

[7] See footnote 5.

of showing that all of the *Golding* conditions are met, we may "respond to the defendant's claim by focusing on whichever [*Golding*] condition is most relevant in the particular circumstances." Id., 240.[8]

The standard of review for claims of instructional impropriety under *Golding* is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007). "An accurate jury instruction cannot be the basis for a showing that the defendant was clearly deprived . . . of a fair trial." (Internal quotation marks omitted.) *State* v. *Sanko*, 62 Conn. App. 34, 40–41, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001).

---

[8] "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable . . . ." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). We conclude that the defendant's claim is reviewable under *Golding* because the record is adequate for review, and the claim of instructional impropriety is of constitutional magnitude. See *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995).

## A

We first address whether the court properly gave a number of witnesses instruction. The defendant did not object to the court's instruction but now claims that it impermissibly drew attention to his choice not to present evidence, in violation of the fifth amendment to the United States constitution.[9] We conclude, however, that the defendant's claim fails under *Golding*'s third prong because the court's number of witnesses instruction did not violate the defendant's constitutional rights.

The defendant presented no witnesses and no evidence at trial. Nevertheless, the court gave the following number of witnesses instruction: "[T]he weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You may consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other side. It is the quality of the evidence, not the quantity of the evidence, that you consider." The defendant argues that a number of witnesses instruction is proper only when a defendant presents a witness or witnesses.

We find persuasive on this issue the analysis set forth in *United States* v. *Moss*, 756 F.2d 329 (4th Cir. 1985). In *Moss*, the District Court gave an instruction to the jury about the number of witnesses even though the defendants in that case presented no witnesses and no evidence at trial.[10] Id., 334. The United States Court of

---

[9] Only adverse comments by the court on the defendant's refusal to testify warrant reversal. *Lakeside* v. *Oregon*, 435 U.S. 333, 338–39, 98 S. Ct. 1091, 55 L. Ed. 2d 319 (1978). On its face, the court's number of witnesses instruction was not an adverse comment on the defendant's decision not to testify. Moreover, the court specifically instructed the jury that it could not draw any unfavorable inferences from the defendant's decision not to testify.

[10] The District Court's instruction in *Moss* was: "The weight of the evidence is not necessarily to be determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to a fact is more persuasive than that

Appeals for the Fourth Circuit determined that although courts should refrain from giving a number of witnesses instruction when the defendant has no witnesses, the District Court's instruction did not violate the defendants' constitutional rights. Id., 335.

"In *Lakeside* [v. *Oregon*, 435 U.S. 333, 98 S. Ct. 1091, 55 L. Ed. 2d 319 (1978)], the Supreme Court addressed the analogous issue of whether a protective instruction that the jury should not consider the defendant's failure to testify given over his objection constituted constitutional error. . . . The Supreme Court reasoned that the purpose of such an instruction was to remove from the jury's deliberations any influence of unspoken adverse inferences, and therefore [i]t would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect. . . .

"Like the protective instruction given in *Lakeside*, the number of witnesses instruction is intended to protect defendants who frequently have fewer witnesses testify than the government from any adverse inferences that might be drawn from this fact. Further, the defendant in *Lakeside* objected to the trial court's protective instruction because he feared that the instruction would draw needless attention to his failure to testify. . . . This is the same concern that the defendants had when they objected to the number of witnesses instruction given below. Consequently, this challenged instruction did not violate [the] defendants' privilege against compulsory self-incrimination guaranteed by the fifth and fourteenth amendments." (Citations omitted; internal quotation marks omitted.) *United States* v. *Moss*, supra, 756 F.2d 334–35.

Although the defendant in the present case did not object at trial to the challenged instruction, he makes

of a greater number of witnesses, or you may find that they are not persuasive at all." *United States* v. *Moss*, supra, 756 F.2d 334.

the same arguments on appeal as the defendants in *Moss*. He argues that the court's instruction drew unnecessary attention to the fact that he had presented no witnesses and, moreover, permitted the jury to conclude that it was appropriate to draw a negative inference from the total absence of any defense witnesses. We reject these arguments. We agree with the *Moss* court that courts should refrain from giving a number of witnesses instruction when the defendant presents no witnesses. The court's number of witnesses instruction did not violate the defendant's privilege against compulsory self-incrimination guaranteed by the fifth and fourteenth amendments.[11] Because we conclude that the court's number of witnesses instruction was proper, the defendant's claim must fail under the third prong of *Golding*.[12]

## B

The defendant also claims that the court improperly undermined the presumption of innocence by instructing the jury: "The state does not want the conviction of any person whose guilt upon the evidence there is a reasonable doubt." In *State* v. *Lawrence*, supra, 282 Conn. 179–81, our Supreme Court rejected this identical argument, finding that "[t]he court did not instruct that the state prosecutes only guilty people,

[11] The defendant also argues that the court's use of the phrase "smaller number of witnesses on one side" failed to address the fact that he presented no witnesses. Although, perhaps, it would have been preferable for the court to have stated that the jury was to draw no adverse inference from the fact that the defendant presented *no* witnesses, rather than a smaller number of witnesses, such a distinction does not change the constitutionality of the court's instruction.

[12] In the alternative, the defendant seeks plain error review of his claim. Practice Book § 60-5 provides in relevant part: "The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Because we conclude that the defendant's argument fails on its merits, we need not address the defendant's claim of plain error. See *State* v. *Rouleau*, 204 Conn. 240, 243, 528 A.2d 343 (1987) (declining to address claim of plain error when claim reviewable under predecessor of *Golding*).

but rather that the state requires the conviction of only the guilty." (Internal quotation marks omitted.) Id., 180. There is no legally meaningful distinction between *Lawrence* and the present case, and we conclude that the defendant's claim fails under the third prong of *Golding* because there is no reasonable possibility that the jury was misled.

## IV

The defendant's fourth claim is that the court improperly denied his motion for a new trial. Specifically, he argues that the court's denial of his motion for a new trial should be reversed because "the state's case relied entirely upon the testimony of one patently incredible witness with a strong motive to lie," and, without her testimony, the state lacked sufficient evidence to prove his guilt beyond a reasonable doubt. We disagree.

We first note our standard of review for challenges to rulings on motions for new trials. "Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In our review of the denial of a motion for [a new trial], we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999).

"In determining whether there has been an abuse of discretion, every reasonable presumption should be

given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Fitzgerald*, 257 Conn. 106, 112, 777 A.2d 580 (2001).

The thrust of the defendant's argument is that Levesque was not credible, and, therefore, the defendant's motion for a new trial should have been granted because the state presented no other evidence indicative of his guilt. We do not agree.

"We assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

In this case, the credibility arguments raised by the defendant are arguments that he properly raised at trial, and they were properly before the jury. They are not, however, the proper subject of an appeal. The jury was able to judge for itself whether Levesque's testimony was credible, and, apparently, it concluded as much. It is not for this court to pass on the credibility of a witness. We therefore cannot say that the court abused its discretion in denying the defendant's motion for a new trial.

The judgments are affirmed.

In this opinion the other judges concurred.