# STATE OF CONNECTICUT *v.* JASON BREE
## (AC 32646)

Beach, Alvord and Borden, Js.

1

Argued December 1, 2011—officially released June 5, 2012

*Katherine C. Essington*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Kevin Lawlor*, state's attorney, and *Charles Stango*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Jason Bree, appeals from the judgments of conviction, rendered after a jury trial, of three counts of robbery in the first degree in violation of General Statutes § 53a-134, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134, larceny in the second degree in violation of General Statutes § 53a-123, conspiracy to commit larceny in the second degree in violation of §§ 53a-48 and 53a-123, larceny in the sixth degree in violation of General Statutes § 53a-125b and unlawful possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. The defendant claims that the court erred in (1) granting the state's motion for joinder, (2) initially denying his motion to suppress certain testimony and later denying his motion for a mistrial after the court struck the previously admitted testimony in question, and (3) failing to give the jury an instruction regarding the special considerations

applicable to accomplice testimony. We affirm the judgments of the trial court.

The defendant was accused of having committed crimes under three separate informations. Under docket number CR-08-0138376 (Shelton case), the defendant was charged with robbery in the first degree, conspiracy to commit robbery in the first degree, larceny in the second degree and conspiracy to commit larceny in the second degree. With respect to the Shelton case, the jury reasonably could have found the following facts. On September 27, 2008, at approximately 6:30 a.m., Nalinjumar Patel was working at the Wooster Street Market, a convenience store in Shelton, when Gabriel Santiago entered the store, asked for loose cigarettes and inquired in what town the store was located. When Patel told Santiago that he was in Shelton and informed him that the store did not sell loose cigarettes, Santiago left. Soon thereafter, the defendant and William Torres entered the store. The defendant jumped behind the counter and took approximately ninety cartons of cigarettes while Torres pointed a gun at Patel, demanding his wallet. During the course of the robbery, a regular customer, Anthony Carroll, entered the store, and exclaimed: "What the hell is going on?" Carroll immediately left the store and telephoned the police. The defendant, Torres and Santiago drove away in a sky blue Infiniti.

Under docket number CR-08-0137989 (Ansonia case), the defendant was charged with illegal possession of a weapon in a motor vehicle and larceny in the sixth degree. With respect to the Ansonia case, the jury reasonably could have found the following facts. On October 22, 2008, at approximately 9 a.m., Ahmed Hadi was working at the Aden Mini-Mart, a convenience store in Ansonia, when the defendant entered the store and asked for four packs of Newport cigarettes. After Hadi put them on the counter, the defendant asked for a

pack of Marlboro cigarettes. When Hadi bent down to get the Marlboro cigarettes, the defendant took the four packs of Newport cigarettes from the counter, ran out of the store and drove away in a dark colored sports utility vehicle with a New York license plate. Hadi telephoned the police. While in the middle of the telephone call, Hadi stopped a police officer who was driving by and informed him of what had occurred and gave him a description of the defendant and the defendant's vehicle along with a partial license plate number. Shortly thereafter, another officer stopped a vehicle approximately one and one-half miles from the Aden Mini-Mart, which vehicle matched Hadi's description. The defendant was driving the vehicle, which he had rented. Inside the vehicle were four packs of Newport cigarettes and a knife.

Under docket number CR-08-0087395 (Woodbridge case), the defendant was charged with two counts of robbery in the first degree. With respect to the Woodbridge case, the jury reasonably could have found the following facts. On November 14, 2008, at approximately 7:30 p.m., while Vamsi Makdhal was working at the counter of a Lukoil convenience store in Woodbridge and his cousin, Imran Sarfani, was completing paperwork in a back office, the defendant entered the store. The defendant placed a knife next to Makdhal's stomach and said "give me the cash." The defendant briefly held the knife at Makdhal's neck as well. Makdhal went over to the cash register and opened it, but was too frightened to give the defendant the cash, so the defendant took the cash himself. When the defendant asked for cartons of cigarettes, Makdhal informed him that the cartons were kept in the back office. The defendant took Makdhal to the back office. The defendant took a garbage bag from the office, emptied it and told Sarfani to put cartons of cigarettes in the bag. At some point, the defendant waved the knife at Sarfani. After

Sarfani complied, the defendant ran out of the store. Makdhal ran out of the store and was able to see the model of the car that the defendant drove away in and a partial license plate number.

Following a jury trial, the defendant was convicted of all charges. The court sentenced him to fifteen years imprisonment with five years special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in granting the state's motion for joinder. We are not persuaded.

The following additional facts are relevant. Prior to trial, the state filed a revised motion for joinder, dated April 14, 2010, seeking to join the three cases for trial. The defendant filed an objection. On April 30, 2010, argument was held on the motion. The state argued that joinder was appropriate under the *Boscarino*[1] factors because the factual scenarios were easily distinguishable, the crimes were not brutal or shocking, the trial would last two to four days if the three cases were joined and some evidence was cross admissible. The defendant argued against joinder, reasoning that the three cases concerned factually similar but legally unconnected offenses, the evidence in the three cases was not cross admissible and joinder would result in prejudice to the defendant. In a memorandum of decision filed April 30, 2010, the court granted the state's motion for joinder. The court noted that, although it could not be certain prior to trial whether the evidence in the three cases would be cross admissible, the charges involved discrete and distinguishable factual scenarios that could be presented in an orderly fashion

---

[1] *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987).

and appropriate jury instructions would be given throughout trial. The court did not expressly mention any presumption of joinder, nor did it specifically allocate a burden of proof as to the issue of joinder.

During the presentation of its case, the state withdrew its motion regarding a jury instruction on cross admissibility and stated that it would argue the elements of each case separately during summation. Also, at that time, the defendant reasserted his motion for severance. The court denied the motion. The court noted that it would repeatedly instruct the jury to consider the three cases independently.

"[W]hether a joint trial will be substantially prejudicial to the rights of the defendant . . . means something more than that a joint trial will be less advantageous to the defendant. . . . [W]e have identified several factors that a trial court should consider . . . . These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Ouellette*, 110 Conn. App. 401, 406–407, 955 A.2d 582 (2008), aff'd, 295 Conn. 173, 989 A.2d 1048 (2010); see also *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987); General Statutes § 54-57; Practice Book § 41-19.

In *State* v. *Payne*, 303 Conn. 538, 543–44, 34 A.3d 370 (2012), the Supreme Court abolished the previous blanket presumption in favor of joinder. See, e.g., *State* v. *Davis*, 286 Conn. 17, 942 A.2d 373 (2008). In *Payne*, our Supreme Court allocated the burden of persuasion

differently in the trial context than in the appellate context. It stated that "[w]hen charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the case is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors."[2] *State* v. *Payne,*

---

[2] Following oral argument in this case, our Supreme Court issued its decision in *State* v. *Payne,* supra, 303 Conn. 538. Pursuant to Practice Book § 67-10, the defendant suggested that *Payne* was relevant to the issue of joinder. We sua sponte ordered the parties to file supplemental briefs addressing the following issues: "(1) is the *Payne* decision applicable to this case; (2) if so, did the trial court rule improperly on the issue of joinder in light of the decision in *Payne* and (3) if so, is any error harmless?" In his supplemental brief, the defendant argued that *Payne* applies and, therefore, it was the state's burden to prove before the trial court that the defendant was not unduly prejudiced by the joinder in light of the *Boscarino* factors and that the state did not do so. In its brief, the state argued that, regardless of whether *Payne* applies, it should have no impact on our decision because on appeal the defendant cannot show that the trial court abused its discretion in joining the cases for trial or that any error was harmful.

Although our Supreme Court stated that the ruling in *Payne* would not apply retroactively in habeas proceedings; *State* v. *Payne,* supra, 303 Conn. 550 n.10, it did not so limit the applicability of *Payne* with respect to direct appeals. Accordingly, *Payne* is presumed to apply retroactively to this case. See *Marone* v. *Waterbury,* 244 Conn. 1, 10, 707 A.2d 725 (1998) (under general rule, judgments that are not by their terms limited to prospective application presumed to apply retroactively to pending cases). In its memorandum of decision on the state's motion for joinder, the trial court did not expressly rely on a presumption of joinder, and neither party argues that it did. Rather, the trial court stated that joinder was appropriate on the basis of the first *Boscarino* factor. Although the trial court did not have the benefit of *Payne* and did not expressly state that it found the *Boscarino* factors in favor of joinder by a preponderance of the evidence, the court did expressly find that the cases could be presented in a way that was not confusing and that instructions would be given to the jury. The court noted that there was no suggestion by the defendant that the second and third factors were "applicable."

supra, 549–50. Accordingly, the state bears the burden of persuasion in the trial court.

The court specifically retained, however, the traditional allocation of the burden of persuasion for the purpose of appeal: "Despite our reallocation of the burden when the trial court is faced with the question of joinder of cases for trial, the defendant's burden of proving error on appeal when we review the trial court's order of joinder remains the same. See *State* v. *Ellis*, 270 Conn. 337, 376, 852 A.2d 676 (2004) ('[i]t is the defendant's burden on appeal to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury' . . .)." (Emphasis omitted.) *State* v. *Payne*, supra, 303 Conn. 550 n.11.

We consider, therefore, the joinder issue in light of *Payne*. First, the defendant's three cases involved discrete, factually distinguishable scenarios. Although all three cases involved cigarettes taken from convenience stores, the three cases were not so similar so as to substantially prejudice the defendant. See *State* v. *Fauci*, 87 Conn. App. 150, 159, 865 A.2d 1191 (2005) (no abuse of discretion in joinder of three informations arising out of three robberies of three different fast food restaurants where, in each incident, rocks were thrown through glass doors of restaurants, but where each robbery took place on different date, at different location, with different victims), aff'd, 282 Conn. 23, 917 A.2d 978 (2007); *State* v. *Bell*, 93 Conn. App. 650, 656, 891 A.2d 9 (not abuse of discretion to join two cases that both involved crimes at Friendly's restaurants where sole employee put into walk-in refrigerator, but which took place on different days in different towns with different victims), cert. denied, 277 Conn. 933, 896 A.2d 101 (2006).

In the present case, the robberies occurred on different days and at different locations. In the Shelton robbery, which occurred in September, 2008, the defendant

jumped behind the counter and took boxes of cigarettes while an accomplice pointed a gun at Patel, demanding his wallet. In the Ansonia robbery, which occurred in October, 2008, the defendant had no accomplices. After asking for four packs of Newport cigarettes, the defendant absconded with them when Hadi bent down to get an additional item that the defendant had requested. In the Woodbridge robbery, which occurred in November, 2008, the defendant threatened Makdhal with a knife and demanded cash from the cash register and also threatened Sarfani with a knife demanding that he fill a garbage bag with cartons of cigarettes.

Second, although the Woodbridge and Shelton cases involved, respectively, a coconspirator threatening the use of a gun and the defendant threatening the use of a knife, these two cases were not necessarily so "brutal and shocking" so as to compromise the jury's ability to consider fairly the charges against the defendant in the Ansonia case, which did not involve the use of a weapon. See, e.g., *State* v. *Cassidy*, 236 Conn. 112, 134, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds by *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000).

Third, the trial was not particularly lengthy or complex.[3] The joinder of the three cases did not result in a trial that was unreasonably long; the presentation of the state's evidence occurred in less than three days, and the defendant presented his evidence in less than one day. See *State* v. *Swain*, 101 Conn. App. 253, 263–64, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007), and cases cited therein. Additionally, the state

[3] The defendant also argues that judicial economy was not served because the state presented witnesses seriatim and little evidence was cross admissible. After having considered the three *Boscarino* factors, we conclude that the court did not abuse its discretion in granting the state's motion for joinder.

presented its evidence on each of the three cases discretely, thereby mitigating any risk of juror confusion. See *State* v. *Cassidy*, supra, 236 Conn. 134–35.

Finally, the court's instructions to the jury prior to trial and in the final charge that the jury was to consider each of the cases separately, further minimized any risk of prejudice that might have been caused by the joinder of the three cases. See *State* v. *Payne*, supra, 303 Conn. 554. We conclude that the defendant has not demonstrated that the court's ruling caused him substantial or unfair prejudice, despite the possibility that the court inadvertently misallocated the burden of persuasion. Accordingly, we conclude that the court's ruling on the state's motion for joinder was not an abuse of discretion.

II

The defendant next claims that the court erred in (1) initially denying his motion to suppress the identification testimony of the defendant's probation officer, Tricia Kolich, and (2) later denying his motion for a mistrial after the court struck Kolich's identification testimony that previously had been admitted. We disagree.

Prior to trial, the defendant filed a motion to suppress "any in court or out of court identification of [him] as a result of a show-up or line-up, or photographic array conducted by any law enforcement agency or any other show-up because it was conducted or occurred under circumstances which were impermissibly suggestive . . . ." Following a hearing on that motion, at which the defendant presented testimony from Kolich, the court denied the defendant's motion to suppress. At trial, Kolich was initially called as a witness regarding the Ansonia case. She testified about certain incidents of which the defendant had informed her with respect

to the Ansonia case. There is no issue presented on this appeal regarding her testimony about the Ansonia case.

Kolich was called again as a witness regarding the Woodbridge case. She testified that officers from the Woodbridge police department showed her high resolution frame-by-frame images taken from surveillance video footage of the Woodbridge robbery. She testified that the officers told her that the defendant was a suspect and asked her whether the person in the image was the defendant. She stated that she informed the officers that the person in the video bore a strong resemblance to the defendant based on clothing, facial hair and stance.[4] She further stated that she offered to bet money on the fact that the person in the images was the defendant. At this point, the defendant objected and asked that Kolich's testimony in the Woodbridge case be stricken.

After hearing argument on the issue outside of the presence of the jury, the court granted the defendant's motion to strike the entirety of Kolich's testimony in the Woodbridge case.[5] Once the jury returned, the court informed the jury that Kolich's testimony in the Woodbridge case had been stricken in its entirety and that the jury should disregard it. After the jury was dismissed for the day, the defendant moved for a mistrial[6] on the basis that the jury heard Kolich's testimony in the Woodbridge case and could not reasonably be expected to disregard it entirely. The court denied the motion. In its final instructions to the jury, the court repeated

---

[4] In her capacity as his probation officer, Kolich apparently knew the defendant well by sight.

[5] The language about Kolich's being willing to bet that the person in the surveillance video was the defendant, apparently, was a deciding factor in the court's decision to strike the testimony.

[6] The defendant did not specify whether the mistrial pertained to the Woodbridge case only, in which case Kolich's testimony was stricken, or as to all three cases.

that Kolich's testimony in the Woodbridge case had been stricken and that the jury was not to consider it and was to treat it as if it did not exist.

The defendant first argues that the court abused its discretion in denying his motion to suppress Kolich's identification testimony in the Woodbridge case. We need not address this argument. The court subsequently ruled that the testimony was inadmissible and struck the testimony at issue. This action renders moot the defendant's claim regarding the denial of his motion to suppress because a successful resolution of this issue would not benefit the defendant if the subsequent instructions to disregard the testimony were effective. See *State* v. *McElveen*, 117 Conn. App. 486, 489–90, 979 A.2d 604 (2009) ("it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow" [internal quotation marks omitted]), appeal dismissed, 302 Conn. 532, 29 A.3d 897 (2011).

The defendant argues, however, that the court abused its discretion in denying his motion for a mistrial. The defendant states that there was minimal evidence concerning the identity of the robber in the Woodbridge case and that Kolich's testimony identifying the defendant as the robber was so prejudicial that the jury likely was unable to follow the court's curative instructions to disregard it. We are not persuaded.

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can

obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Ortiz*, 280 Conn. 686, 702, 911 A.2d 1055 (2006).

The principal issue in the Woodbridge case was whether the defendant committed the robbery. Although Kolich's stricken testimony addressed that issue, there was other evidence from which the jury reasonably could have found that the defendant had committed the robbery.

There was evidence that the make and model of the car used in the robbery matched one rented to the defendant and that the license plate numbers were also consistent. Makdhal testified that, after the robber left, Makdhal ran outside and was able to see the license plate number of the robber's car, with the exception of the last letter. Sarfani testified that he noticed that the car used by the robber was a black Chrysler 300. Robert Crowther, a Woodbridge police detective, testified that while he was en route to the crime scene he asked a dispatcher to "run the alphabet" to find if any missing letter would form a complete license plate number that belonged to a black Chrysler. He stated that a match was found and that the car belonged to a rental car company in Milford, which car at that time had been rented to the defendant.

Additionally, Crowther testified that, during an interview with the defendant, the defendant stated that he

had rented the car in question but that he had loaned it to Torres in exchange for crack cocaine. Crowther stated that the defendant also told him that, on the day in question, he was "getting high" and that Torres did not return the car, but, rather, the defendant found the car later that night in Bridgeport with the keys inside. There also was evidence that the defendant knew of specific details of the robbery that had not been told to him by the police. Crowther testified that when he questioned the defendant about the robbery, the defendant's demeanor changed from calm to nervous, and he said, "I don't know anything about putting no knife to anybody's neck." Crowther stated that, although he told the defendant that there was an ongoing investigation in Woodbridge, police officers did not tell the defendant, or the defendant's mother with whom the police had conversed with earlier, that a knife had been used in the commission of the robbery.

The court's curative instructions obviated prejudice that may have resulted from Kolich's testimony identifying the defendant as the robber. "It is well settled that the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary. . . . Thus, [a] jury is normally presumed to disregard inadmissible evidence brought to its attention unless there is an overwhelming probability that the jury will not follow the trial court's instructions and a strong likelihood that the inadmissible evidence was devastating to the defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Luther*, 114 Conn. App. 799, 807, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). The defendant has not met his burden of showing that the stricken testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury reasonably cannot be presumed to have disregarded it. Accordingly, we conclude

that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

## III

The defendant finally claims that the court erred in failing to give an instruction regarding the special considerations applicable to accomplice testimony, with respect to the testimony of the state's witness, Santiago. We agree but conclude that the error was harmless.

On direct examination, Santiago testified regarding the Shelton case as follows. On September 27, 2008, he sold crack cocaine to Torres and the defendant. After the three men had smoked crack cocaine, they entered the defendant's vehicle and traveled to Bridgeport. Santiago obtained heroin and, after using it, "got high" and fell asleep in the car. When Santiago awoke, the car was parked at a convenience store. Santiago entered the store and asked for loose cigarettes. After being informed that the store did not sell loose cigarettes, Santiago left the store, returned to the car and fell asleep. He awoke when Torres and the defendant returned to the car, passed a gun between them and threw boxes of cigarettes on top of him.

On cross-examination, Santiago testified that he initially lied to the police by telling them he had been working on the day in question. Santiago further admitted that he had declined to select the defendant from a photographic array because he had not wanted to identify him. He also stated that he later told the police that he did not know the names of the two individuals he was with and that he had never been to Shelton before, but did so only because he had no recollection, at that point, of the day in question.

The defendant filed a request to charge entitled "accomplice testimony," regarding the testimony of

Santiago.[7] The court did not give this instruction to the jury. The court gave the jury general instructions regarding witness credibility and referred briefly to Santiago.[8] The court did not specifically tell the jury that an accomplice may have a motive to testify in a way

[7] The defendant's request to charge stated: "In weighing the testimony of an accomplice who is a self-confessed criminal, you should consider that fact. It may be that you would not believe a person who has committed a crime as readily as you would believe a person of good character. In weighing the testimony of an accomplice who has not yet been sentenced or whose case has not yet been disposed of or who has not been charged with offenses in which the state has evidence, you should keep in mind that he may in his own mind be looking for some favorable treatment in the sentence or disposition of his own case or hoping not to be arrested. Therefore, he may have such an interest in the outcome of this case that his testimony may have been colored by that fact. Therefore, you must look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it.

"There are many offenses that are of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime. It is for you to decide what credibility you will give to a witness who has admitted his involvement and criminal wrongdoing whether you will believe or disbelieve the testimony of a person who by his own admission has committed or contributed to the crime charged by the state here. Like all other questions of credibility, this is a question you must decide based on all the evidence presented to you."

At the charging conference, the defendant altered his request to charge and asked for the charge to be given without any reference to Santiago being a "self-confessed criminal."

[8] After instructing the jury generally on credibility, the court stated: "Santiago testified in this matter. A person is an accomplice when that person is a witness in a criminal action who, according to the evidence, may reasonably be considered to have participated in the offense charged. There are many offenses of such character that only persons capable of [giving] useful testimony are those who are themselves implicated in the crime. It is for you to decide the credibility of that witness in [accordance] with the factors I have just relayed to you.

"These are some of the factors you may choose to consider, among others. There is also—you may consider in terms of evaluating the credibility of any witness, there has been evidence that . . . Santiago [was] previously convicted of felony charges. . . . Santiago also, I believe, had some—a larceny charge as well, which may not have been a felony. And these were offered for one purpose, admissible on the question of the credibility of those witnesses; that is, the weight you may give that witness' testimony. The witness' criminal record bears only on your determination in evaluating

that he perceives to be favorable to the state in the hope that he may receive favorable treatment in his own case.

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses. . . . [When] it is warranted by the evidence, it is the court's duty to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if [he or she] assisted or aided or abetted in the commission, of the offense with which the defendant is charged. . . . [I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose. . . .

"With respect to the credibility of accomplices, we have observed that the inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury [because] . . . [t]he conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the [court] to specially caution the jury. . . . Moreover, because an instructional error relating to general principles of witness credibility is not constitutional in nature . . . the defendant bears the burden of establishing that the error deprived him of his due process right to a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 823–24, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010).

that person's credibility. It is your duty, again, to determine whether this witness or those witnesses are to be believed wholly or in part or not at all. You may consider the witness' prior convictions in weighing the credibility of this witness and give such weight to those facts that you decide are fair and reasonable in determining the credibility of that witness."

The state suggests that an accomplice instruction may not have been appropriate because, during his testimony, Santiago maintained his innocence in the Shelton robbery. Our review of the evidence, viewed in the light most favorable to support the defendant's request to charge; *State* v. *Stevenson*, 53 Conn. App. 551, 576, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999); reveals that, although Santiago did not confess to being an accomplice in the Shelton robbery, an accomplice instruction was nevertheless warranted under the facts of this case.

At the defendant's trial, Santiago admitted to riding with the defendant and Torres to Shelton and entering the convenience store first and asking for loose cigarettes. Patel testified that after Santiago left the store, two masked men—the defendant and Torres—entered the store and stole cigarettes. Benjamin Trabka, a Shelton police detective who had been called to the scene of the robbery on the day in question, testified that he believed that Santiago was involved in the robbery and that Santiago had "scoped out" the store. The conspiracy to commit robbery count of the long form information in the Shelton case named Santiago as a coconspirator. The state, in its closing argument, suggested that the defendant had conspired with Santiago regarding the Shelton robbery.[9]

Additionally, Santiago's credibility may well have been called into question because he was criminally charged with respect to the Shelton robbery. His case had not yet been disposed of, and, therefore, he may have been hoping for favorable treatment in the disposition of his own case. His testimony may have been colored by that fact. Under the circumstances, Santiago's not having admitted commission of a crime did

[9] The state also argued that if the jury believed Santiago's testimony that he did not participate in the robbery, the defendant could still be found guilty of conspiracy for conspiring with Torres.

not, by itself, nullify the substantial evidence tending to show that he aided or abetted the commission of the Shelton robbery and shared a "mutuality of intent and community of unlawful purpose." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 227, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). The court erred in failing to give an accomplice instruction.

Having concluded that the failure to give the instruction was error, we now turn to whether the defendant has proven harmfulness. "Several factors guide our determination of whether the trial court's failure to give the requested instruction was harmful. These considerations include: (1) the extent to which [the witness'] apparent motive for falsifying his testimony was brought to the attention of the jury, by cross-examination or otherwise; (2) the nature of the court's instructions on witness credibility; (3) whether [the witness'] testimony was corroborated by substantial independent evidence; and (4) the relative importance of [the witness'] testimony to the state's case." *State* v. *Patterson*, 276 Conn. 452, 472, 886 A.2d 777 (2005).

With respect to the first factor, Santiago testified on cross-examination that he was charged as a participant in the Shelton robbery but that his case had not been disposed of. He stated that he was innocent of the charges brought against him in the Shelton robbery. He admitted to having "a whole lot" of felony convictions. He also testified that he initially had lied to the police regarding his involvement in the Shelton robbery. Although Santiago testified that he did not expect favorable treatment from the state, his credibility was questioned during the defendant's closing argument. During closing argument, the defendant focused on Santiago's lack of credibility and noted that he was an "admitted liar" regarding the Shelton case. Santiago's credibility

was attacked, and his motives for testifying falsely were brought to the attention of the jury.

With respect to the second factor, the court gave the jury general instructions to consider any bias or prejudice that a witness may have in judging that witness' credibility. The court mentioned Santiago by name[10] and stated that evidence of his previous felony convictions was admitted only for the purpose of evaluating his credibility. In its instructions to the jury on credibility, the court stated: "Your job, credibility of witnesses. In deciding what the facts are, you must consider, again, all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none, or any part of any witness' testimony. That is up to . . . you. In making that decision, you may take into account a number of factors, including the following. . . . [D]id the witness have an interest in the outcome of this case, or any bias or prejudice concerning any party or any matter involved in this case?"

With respect to the third factor, Santiago's testimony was corroborated by substantial independent evidence. A videotape from the store's surveillance camera was entered into evidence, along with various still photographs from the videotape footage, which included, inter alia, photographs of the defendant behind the counter and jumping over the counter. In the photographs, the defendant was wearing a baseball hat and a covering over his nose and face. The quality and thus the persuasive value of the surveillance video and photographs left much to be desired,[11] but the weight to be given to them was for the jury to determine.

The videotape notwithstanding, there was significant additional evidence presented to the jury. There was

---

[10] See footnote 8 of this opinion.

[11] At the very least, the videotape and photographs did not tend to clear the defendant.

testimony that the men who robbed the convenience store left in a sky blue Infiniti. Trabka testified that he viewed the surveillance footage and saw that the car used in the robbery was "a unique car . . . a sky blue Infiniti G32." Patel testified that the men left in a blue car, and Carroll noted that when he walked into the store, a man was sitting in a blue car that was parked next to the store. There was evidence that a sky blue Infiniti was registered to the defendant.

There was corroborating evidence that placed Santiago at the scene of the robbery. Although the photographs from the surveillance footage depict the defendant with his face mostly covered, the photographs of Santiago show his face and are quite clear. Trabka stated that following the robbery a clear still photograph taken by the surveillance camera of the man who initially entered the store was placed in various newspapers. The person in the photograph was identified as Santiago by a person who telephoned the Shelton police department.

Trabka's testimony corroborated Santiago's testimony that Torres and the defendant were involved in the Shelton robbery. Trabka testified that after interviewing Santiago about the robbery, he was aware of Torres' street name. Trabka testified that during the course of the investigation, he learned more about the defendant's connection to the robbery. Trabka's testimony linked the defendant to Torres, Santiago and the blue Infiniti. The defendant's cell phone number and license plate number were in the "contact" section of Santiago's cell phone. The license plate number corresponded to a blue Infiniti registered to the defendant.

In *State* v. *Patterson*, supra, 276 Conn. 473, the Supreme Court held that the court's failure to give a special credibility instruction relating to a jailhouse informant was harmful. Although *Patterson* involves

the failure to give a jailhouse informant instruction, as opposed to an accomplice instruction, the considerations regarding harmlessness are applicable. See *State v. Santiago*, 103 Conn. App. 406, 412, 931 A.2d 298, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). The court in *Patterson* focused on the third and fourth factors, which the court noted, "militate[d] strongly" in favor of harmful error because the informant's testimony was the only evidence adduced by the state that directly implicated the defendant.[12] *State* v. *Patterson*, supra, 473. The court concluded that "because [the informant's] testimony was so critical to the state's case, and because the other evidence on which the state relied was so weak, we cannot say that the trial court's failure to charge the jury specially regarding [the informant's] credibility was harmless." Id.

In the present case, an analysis of the four *Patterson* factors suggests that the defendant has not shown harmful error. The first and second factors strongly militate toward harmlessness. Testimony regarding Santiago's pending case was before the jury, and the defendant argued that Santiago was not truthful in his testimony and urged the jury to listen carefully to the court's instructions on credibility. The court did instruct the jury that a witness' interests in the outcome of the case may affect his credibility. The court also instructed that a witness' felony convictions may be taken into

[12] With respect to the first and second factors, the *Patterson* court concluded that the jury was aware that the state had promised the informant certain benefits in exchange for his cooperation, and the court did not specifically mention in its instructions the fact that the credibility of a witness must be considered in light of any benefits that the state has promised such witness in return for his or her cooperation, but it did give a general credibility instruction. *State* v. *Patterson*, supra, 276 Conn. 472.

In the present case, the court did mention Santiago specifically in its instructions regarding credibility, and its instructions were otherwise complete. The third factor, substantial independent evidence, militates more toward harmlessness than harmfulness, unlike the resolution of *Patterson*.

consideration when assessing credibility. The jury was well aware, then, of Santiago's status as a less than pristine witness. The third factor weighs slightly toward harmlessness. As recited previously, there was substantial evidence corroborating Santiago's testimony and supporting the defendant's conviction. The fourth factor clearly favors harmfulness; Santiago's testimony was central to the state's case as to the Shelton robbery. As a whole, however, we hold that in light of the jury's being aware of the infirmities in Santiago's position and the court's generally correct instructions, together with substantial corroborating evidence, the instructional error has not been shown to be harmful.[13]

The central question is not whether the introduction of Santiago's testimony was harmless. Rather the question is whether the defendant has shown that the court's failure to instruct the jury specifically on the hazards of accomplice testimony was harmful. In the circumstances of this case, after consideration of the *Patterson* factors, we conclude that the error was harmless.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[13] The circumstances of this case are similar to those in *State* v. *Santiago*, supra, 103 Conn. App. 414–17, in which the failure to instruct on accomplice testimony was held to be harmless.