STATE OF CONNECTICUT *v.* EARL M. UNDERWOOD
(AC 33397)

Gruendel, Robinson and Alvord, Js.

Argued January 15—officially released May 21, 2013

*Brittany Bussola Paz*, assigned counsel, with whom, on the brief, was *Elizabeth M. Inkster*, assigned counsel, for the appellant (defendant).

*Melissa Patterson,* assistant state's attorney, with whom, on the brief, were *Brian Preleski,* state's attorney, and *John H. Malone,* senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Earl M. Underwood, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree pursuant to General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (1), conspiracy to commit robbery in the first degree pursuant to General Statutes §§ 53a-48 (a) and 53a-134 (a) (1), attempt to commit robbery in the first degree pursuant to General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (2), conspiracy to commit robbery in the first degree pursuant to General Statutes §§ 53a-48 (a) and 53a-134 (a) (2), burglary in the first degree pursuant to General Statutes § 53a-101 (a) (1), burglary in the first degree pursuant to General Statutes § 53a-101 (a) (2), assault in the second degree pursuant to General Statutes § 53a-60 (a) (3) and criminal possession of a firearm pursuant to General Statutes § 53a-217 (a) (1).[1] The defendant advances two claims on

[1] The jury found the defendant guilty of these charges as well as an additional count of assault in the second degree pursuant to § 53a-60 (a) (3) as a lesser included offense and one count of assault in the third degree pursuant to General Statutes § 53a-61 (a) (3) as a lesser included offense. The court vacated the conviction of second degree assault, finding that the second conviction of second degree assault "violates double jeopardy." It vacated the conviction of third degree assault because "that conviction conflicts with the [a]ssault [second] conviction in that it's inconsistent because the [a]ssault [second] conviction requires a state of mind of recklessness. The [a]ssault [third] conviction requires a state of mind of criminal negligence and the Connecticut Supreme Court has ruled that a defendant cannot be simultaneously convicted of differing offenses having different states of mind for the same act." The court also merged the conviction of conspiracy to commit robbery in the first degree pursuant to §§ 53a-48 (a) and 53a-134 (a) (1) with the conviction of conspiracy to commit robbery in the first degree pursuant to §§ 53a-48 (a) and 53a-134 (a) (2) after finding that "[t]here's only one conspiracy . . . ." The parties did not dispute the court's decision with regard to merging or vacating the findings of guilt to comport with the law after the jury returned its verdict.

appeal: (1) the trial court improperly denied the defendant's request that the court issue an accomplice instruction with regard to the testimony of Ashley Mazurowski, a witness for the prosecution, and (2) the conviction of attempt to commit robbery in the first degree pursuant to §§ 53a-49 (a) (2) and 53a-134 (a) (1) and attempt to commit robbery in the first degree pursuant to §§ 53a-49 (a) (2) and 53a-134 (a) (2) violated his state and federal constitutional rights not to be placed twice in jeopardy for the same offense.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In May and June, 2008, the defendant and his girlfriend, Rochelle Bethea, were staying with Mazurowski and her boyfriend, Dennis Dove, in Mazurowski's and Dove's apartment at 511 High Street in New Britain. Dove, a drug dealer, had an acquaintance named Darryl Johnson, with whom he previously had sold drugs. Johnson was acquainted with Creville Bradberry, the victim, because Johnson previously had sold drugs to him.

On June 19, 2008, the victim obtained a large sum of money and had a friend rent a room for him at the LaQuinta Inn in New Britain (hotel). The victim then contacted Johnson from his room in the hotel and requested that Johnson bring him crack cocaine and a prostitute. Johnson complied, and sometime after arriving at the hotel, Johnson was informed by the victim that he had obtained a substantial amount of money. On the following day, June 20, 2008, the victim again

_____

[2] The defendant further claims that his conviction of attempt to commit robbery pursuant to §§ 53a-49 (a) (2) and 53a-134 (a) (1) must be vacated on remand. See State v. Polanco, 308 Conn. 242, 245, 61 A.3d 1084 (2013) ("when a defendant has been convicted of greater and lesser included offenses, the trial court must vacate the conviction for the lesser offense"). Because we conclude that there was no violation of the defendant's double jeopardy protections, we need not reach this claim.

contacted Johnson, requesting half an ounce of crack cocaine, and Johnson agreed to deliver the drugs. Dove drove Johnson and the defendant to the victim's hotel in Mazurowski's white Toyota Camry.

Dove dropped off the defendant and Johnson at the front of the hotel and then parked the car around the corner. Johnson and the defendant, who was carrying Dove's .38 caliber revolver, entered the hotel, walked through the lobby past the hotel's security cameras, took the elevator to the sixth floor and knocked on the victim's door. When the victim partially opened the door, Johnson pushed through the doorway. The defendant followed him into the victim's room and pointed the gun at the victim while Johnson searched the room for the victim's money. The defendant repeatedly asked the victim where the money was, and the victim insisted that the money was not in the hotel room. The defendant attempted to strike the victim with the gun, and the gun discharged, firing a bullet into the victim's upper left shoulder.

The defendant and Johnson immediately fled the room, having failed to obtain any of the victim's money. They descended the stairs to the lobby, walked past the security cameras and exited the front door of the hotel. At the car, Dove inquired why they had obtained no money, and the defendant responded that he had shot someone and feared that the victim may be dead. Dove drove Mazurowski's car away from the hotel, eventually dropping off Johnson at a friend's house and returning with the defendant to the apartment at 511 High Street.

Shortly after returning to the apartment, the defendant announced to Bethea, Dove and Mazurowski that he had shot someone and that he feared the victim was dead. Mazurowski asked the defendant where the gun was, but she received no response. She and Dove then

went outside to discuss the situation and "what [she] needed to do." Mazurowski was concerned that she could be implicated in the shooting if the police found the gun in her apartment, so she returned to the apartment and searched for the gun, which she eventually found on a shelf in the closet area. She wrapped the gun in a bag, drove to a different part of New Britain and tossed the gun from her slowly moving car into a wooded area. She did not discuss the disposal of the gun with Dove or the defendant.

Meanwhile, at the hotel, the victim's girlfriend, who was in the hotel room when the shooting occurred, called the police. The victim gathered his money and attempted to flee the hotel, but he was met and questioned in the hotel's lobby by police officers responding to his girlfriend's call. Based on information obtained during their investigation, the police searched for Mazurowski's car and eventually located it in the parking lot of 511 High Street. After properly obtaining consent from the four occupants, the police conducted a search of Mazurowski's and Dove's apartment. They also obtained surveillance videos from the hotel and searched the victim's hotel room.

In August, 2008, while Dove was in jail on unrelated drug charges, he was arrested and charged with robbery in relation to this case. Mazurowski, who had both a desire to tell the police that Dove was not responsible for the attempted robbery and a growing concern that someone would find the gun she had discarded, decided to inform police that she had disposed of the gun. She led police to the wooded area where she had thrown the gun, and, after several search attempts, the gun was located. Mazurowski was charged with the class D felony of tampering with evidence, a violation of General Statutes § 53a-155. Two and one-half years later, she pleaded guilty to the class A misdemeanor of interfering with police, a violation of General Statutes

§ 53a-167a. In the interim, at the defendant's trial, Mazurowski testified, inter alia, that the defendant had confessed to her that he shot the victim. Three people who were present at the time of the shooting—Johnson, the victim and the victim's girlfriend—also testified that the defendant shot the victim in the course of attempting to rob him. The defendant did not testify.

The defendant requested that, with regard to the testimony of Johnson and Mazurowski, the court issue an accomplice instruction to the jury about the special considerations that must be taken into account when assessing the weight and validity of the testimony of an accomplice to the crime. The court issued an accomplice instruction with regard to Johnson's testimony,[3]

---

[3] The jury charge with respect to Johnson provided: "Under our law, I must instruct you to give careful scrutiny to the testimony of the state's witness, Darryl Johnson, in determining whether to accept or reject his testimony in whole or in part in this case. This is so because Mr. Johnson, who has plead[ed] guilty and is presently incarcerated for a crime related to the incidents here at issue, has testified that the crime he plead[ed] guilty to involved the robbery of Creville Bradberry at the LaQuinta Inn on June 20, 2008, and thus he admits to be what the law describes as an accomplice.

"In weighing the testimony of any person who claims to have been the defendant's accomplice in the commission of the charged offenses you should consider whether that person has such an interest in the outcome of this case that his testimony may have been influenced by that fact.

"Here, Mr. Johnson testified that he was granted immunity by the state from prosecution for any other crimes he described in his testimony to you. It is for you to determine whether he had an interest in this case which may have colored his testimony. He also testified that no other promises were made to him in return for his testimony. It is for you to determine whether to credit that testimony. It is also for you to determine whether he may, in his own mind, be looking for some favorable consideration or treatment in return for his testimony and whether his testimony has been colored by such a desire.

"Despite the special scrutiny with which the testimony of an alleged accomplice must be viewed, the ultimate determination, whether or not to credit his testimony, remains entirely up to you, based upon all the evidence in the case and all the factors affecting witness credibility on which I have instructed you. You may thus choose to believe all, some, or none of what any such witness has said before you, just as you may for any other witness in this case."

but it refused to do so with regard to the testimony of Mazurowski. The court did, however, issue a general credibility instruction with regard to all the witnesses who testified.[4] After deliberation, the jury returned a guilty verdict on two counts of attempt to commit robbery in the first degree, two counts of conspiracy to commit robbery in the first degree, two counts of burglary in the first degree, two counts of assault in the second degree as a lesser included offense, one count of assault in the third degree pursuant to General Statutes § 53a-61 (a) (3) as a lesser included offense and one count of criminal possession of a firearm. After merging one count of conspiracy with the other count and vacating one count of assault in the second degree and the count of assault in the third degree, the court rendered judgment of conviction with a total effective sentence of seventeen years imprisonment. This appeal followed.

---

[4] The jury charge about the general credibility of all the witnesses provided: "You have observed the witnesses. The credibility, the believability of the witnesses, and the weight to be given to their testimony are matters entirely within your hands. You alone determine their credibility. Whether or not you find a fact proven should not be determined by the number of witnesses testifying for or against that fact. It is the quality, not the quantity of the testimony that controls. You are also . . . not bound to accept the fact [as] true simply because a witness testifies to a fact and no one contradicts it. The credibility of the witness and the truth of the fact is for you to determine.

"You may disbelieve all or part of a witness' testimony. In making that decision, you must take into account a number of factors including the following: (1) was the witness able to see or hear or know the things about which that witness testified? (2) How well was the witness able to recall and describe those things? (3) What was the witness' manner and demeanor while testifying? (4) Did the witness have an interest in the outcome of this case? (5) Did the witness have any bias or prejudice concerning any party or any matter involved in the case? (6) How reasonable was the witness' testimony in light of all the evidence in the case? (7) Was the witness' testimony contradicted by what that witness said or did at another time or contradicted by the testimony of other witnesses or by other evidence?

"You should size up the witnesses and make your own judgment as to their credibility. You should decide what portion, all, some, or none, of a witness' testimony you will believe. You should use all your experience, your knowledge of human nature, and the motives which influence and control human conduct in determining who or what to believe."

I

The defendant's first claim is that the court improperly denied his request to provide an accomplice testimony instruction to the jurors with respect to their consideration of Mazurowski's testimony. We disagree.

"Our analysis begins with a well established standard of review. When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Arroyo*, 292 Conn. 558, 566, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010). "A challenge to the validity of jury instructions presents a question of law over which this court has plenary review." (Internal quotation marks omitted.) *State* v. *Bozelko*, 119 Conn. App. 483, 504, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010).

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 823–24, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010). When a trial court denies a request to instruct the jury with regard

to the credibility of accomplice testimony, we view the evidence "in the light most favorable to support the defendant's request to charge . . . ." (Internal quotation marks omitted.) *State* v. *Bree*, 136 Conn. App. 1, 19, 43 A.3d 793, cert. denied, 305 Conn. 926, 47 A.3d 885 (2012). "[W]here it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if he assisted or aided or abetted in the commission, of the offense with which the defendant is charged." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 562, 747 A.2d 487 (2000). "The court's duty to so charge is implicated only where the trial court has before it sufficient evidence to make a determination that there is evidence that the witness was in fact an accomplice." (Internal quotation marks omitted.) *State* v. *Gentile*, 75 Conn. App. 839, 855, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003). If there is insufficient evidence from which a jury reasonably could conclude that the witness was an accomplice, a trial court is correct to deny the proposed instruction. See *State* v. *Colon*, 272 Conn. 106, 226–29, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Ortiz*, supra, 562–63.

An accomplice is "[a] person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense . . . ." General Statutes § 53a-8 (a). "[I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose" with the defendant. (Internal quotation marks omitted.) *State* v. *Moore*, supra, 293 Conn. 824. Our Supreme Court has identified several factors that are relevant in determining whether a court properly

declined to issue an instruction to the jury regarding accomplice testimony: whether the witness was charged with the crimes for which the defendant was tried, whether there was evidence presented at trial that directly linked the witness to the crimes as an accomplice, whether the jury was privy to evidence about the witness' whereabouts during the commission of the crimes, whether the witness was subject to cross-examination and whether the court issued instructions regarding the credibility of witnesses generally. *State* v. *Colon*, supra, 272 Conn. 227–28, citing *State* v. *Ortiz*, supra, 252 Conn. 562–63.

The defendant argues that specific evidence contained in the record, if viewed in the light most favorable to support the defendant's request to charge, supports a determination that a jury reasonably could have concluded that Mazurowski was an accomplice or an unindicted coconspirator. First, the defendant directs this court to testimony that on the day prior to the robbery, Mazurowski overheard a conversation between Johnson and Dove wherein they were planning the robbery. Though Mazurowski testified that she told Dove not to participate in the crime and believed he would not, the defendant argues that this evidence supports a finding that Mazurowski knew the details of the plan to rob the victim, an essential first step in aiding the commission of the plan or conspiring to carry it to fruition. Second, the defendant requests that this court review the evidence suggesting that Mazurowski's car was used in the robbery in conjunction with Mazurowski's testimony that it was her common practice to let Dove use her car only if she was accompanying him. The defendant argues that this evidence supports an inference that either Mazurowski knowingly let Dove borrow her car for the purpose of aiding the three men in the perpetration of the crime, or that she accompanied Dove, Johnson and the defendant to the hotel at the

time of the robbery. Third, the defendant directs this court to evidence that Mazurowski had a private conversation with Dove before disposing of the gun that was used in the crime. Mazurowski testified that she did not discuss the gun with Dove, but the defendant argues that during that private conversation between Dove and Mazurowski, they could have conspired to get rid of the gun, showing a mutuality of intent to conceal evidence of the crime. Finally, the defendant argues that the plea deal given to Mazurowski at her subsequent sentencing proceeding is evidence of the direct benefit she received for testifying at the defendant's trial. As support for this argument, the defendant notes that Mazurowski pleaded to a lesser charge, and that at Mazurowski's plea and sentencing hearing, the prosecutor stated that "at least some of her testimony was materially helpful in the conviction of [the defendant]."

The evidence produced at trial, even when viewed in the light most favorable to the defendant's request to charge, does not support the inferences the defendant suggests. There was no evidence showing that Mazurowski was aware of the robbery until the men returned to the apartment after completing the crime, or that her sole priority at that point was anything other than attempting to rid her apartment of the gun. It does not reveal that she had a mutual intent or purpose to commit the robbery and, accordingly, she was not charged with the same crimes as was the defendant. Mazurowski was cross-examined, and no evidence was elicited suggesting that she accompanied the three men to the hotel or that she conspired with any of the three men to conceal evidence of the crime. In her testimony, Mazurowski revealed the nature of her relationship with Dove, her peripheral connection with the events surrounding the robbery and the pending charge against her for tampering with the evidence. The jury was aware of Mazurowski's pending charges through her direct testi-

mony, defense counsel's cross-examination and defense counsel's closing argument, in which he sought to discredit her as an impartial witness. Further, Mazurowski testified that she had been offered nothing in exchange for testifying at the defendant's trial. In its general credibility instructions, the court instructed the jury to consider any possible bias or prejudice the witness may have had toward any party or matter in this case and whether the witness had any interest in the outcome of the case. The court's general credibility instructions therefore addressed the defendant's concerns, while not improperly tainting the testimony of a witness for whom the evidence did not support the conclusion that she was an accomplice. The court, therefore, properly declined to instruct the jury as the defendant requested.[5]

## II

The defendant's second claim is that his conviction of both attempt to commit robbery in the first degree

---

[5] Even had we concluded that the evidence supported issuing an accomplice instruction to the jury regarding Mazurowski's testimony, the error in this case would have been harmless. See *State* v. *Moore*, supra, 293 Conn. 824 ("because an instructional error relating to the general principles of witness credibility is not constitutional in nature . . . the defendant bears the burden of establishing that the error deprived him of his due process right to a fair trial" [internal quotation marks omitted]). An analysis concerning whether an error of this nature is harmless follows the factors set forth in *State* v. *Patterson*, 276 Conn. 452, 472, 886 A.2d 777 (2005) ("Several factors guide our determination of whether the trial court's failure to give the requested instruction was harmful. These considerations include: (1) the extent to which [the witness'] apparent motive for falsifying his testimony was brought to the attention of the jury, by cross-examination or otherwise; (2) the nature of the court's instructions on witness credibility; (3) whether [the witness'] testimony was corroborated by substantial independent evidence; and (4) the relative importance of [the witness'] testimony to the state's case."). Here, Mazurowski's testimony was corroborated by three eyewitnesses, forensic evidence, video surveillance footage and the defendant's admission that he was in the hotel with Johnson on the afternoon of June 20, 2008. Applying the four factors set forth in *Patterson* to these facts leaves us with the clear conclusion that had the court erred, such error would have been harmless.

pursuant to §§ 53a-49 (a) (2) and 53a-134 (a) (1) and attempt to commit robbery in the first degree pursuant to §§ 53a-49 (a) (2) and 53a-134 (a) (2) violated his federal and state constitutional rights not to be placed twice in jeopardy for the same offense. We disagree.

This claim was not preserved at trial, and the defendant seeks review under the familiar four prongs of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] See, e.g., *State* v. *Culver*, 97 Conn. App. 332, 335–36, 904 A.2d 283, cert. denied, 280 Conn. 935, 909 A.2d 961 (2006). The defendant's claim is reviewable because it satisfies the first two prongs of *Golding*: the record is adequate for review and the claim is of constitutional magnitude because it implicates the defendant's constitutional right not to be placed twice in jeopardy for the same offense. We conclude, however, that the claim fails to meet the third prong of *Golding* because a constitutional violation does not clearly exist and the defendant, therefore, was not deprived of a fair trial.

The following additional facts are relevant to this claim. A substitute information, filed by the state on August 30, 2010, provided in relevant part: "Count One: [the prosecutor] . . . alleges that . . . [the defendant] . . . did commit the crime of CRIMINAL ATTEMPT TO COMMIT ROBBERY IN THE FIRST DEGREE, and alleges that on or about June 20, 2008 at approximately 3:40 [p.m.] inside LaQuinta Hotel, 65 Columbus Boulevard, New Britain, Connecticut, the said [defendant],

---

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to a harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

acting with the kind of mental state required for commission of the crime of ROBBERY IN THE FIRST DEGREE, intentionally did anything which, under the circumstances as he believed them to be, was an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime of ROBBERY IN THE FIRST DEGREE, and, specifically, the said [defendant] and another entered the said LaQuinta Hotel and thereafter one or both entered into Room 621 thereof, and, in the course of the commission of the crime of Robbery, as defined in Section 53a-133 of the Connecticut General Statutes, or of immediate flight therefrom, the said [defendant], or another participant in the crime, Darryl Johnson, *was armed with a deadly weapon,* all in violation of Sections 53a-49 (a) (2) and 53a-134 (a) (2) of the General Statutes of the State of Connecticut. . . .

"Count Three: And the said Attorney further accuses the said [defendant] of the crime of CRIMINAL ATTEMPT TO COMMIT ROBBERY IN THE FIRST DEGREE, and alleges that on or about June 20, 2008 at approximately 3:40 [p.m.] inside LaQuinta Hotel, 65 Columbus Boulevard, New Britain, Connecticut, the said [defendant], acting with the kind of mental state required for commission of the crime of ROBBERY IN THE FIRST DEGREE, intentionally did anything which, under the circumstances as he believed them to be, was an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime of ROBBERY IN THE FIRST DEGREE, and, specifically, the said [defendant] and another entered the said LaQuinta Hotel and thereafter one or both entered into Room 621 thereof, and, in the course of the commission of the crime of Robbery, as defined in Section 53a-133 of the Connecticut General Statutes, or of immediate flight therefrom, the said [defendant], or another participant in the crime, Darryl Johnson,

caused serious injury to a person who was not a participant in the crime, all in violation of Sections 53a-49 (a) (2) and 53a-134 (a) (1) of the General Statutes of the State of Connecticut." (Emphasis added.)

"The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. . . . Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of [the Connecticut constitution] include protection against double jeopardy. . . . We have further recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . The last protection is at issue in the present case.

"In determining whether a defendant has been placed in double jeopardy under the multiple punishments prong, we apply a two step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . .

"Traditionally we have applied the [test set out in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)] to determine whether two statutes criminalize the same offense . . . . Under that test, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two

offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial. . . . Thus, [t]he issue, though essentially constitutional, becomes one of statutory construction." (Citations omitted; internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 5–7, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009). "[I]f two offenses stand in the relationship of greater and lesser included offense, [however] then [t]he greater offense is . . . by definition the same for purposes of double jeopardy as any lesser offense included in it. . . . If it is possible to commit the greater offense in the manner described in the information without having first committed the lesser offense, then the lesser is not an included offense." (Internal quotation marks omitted.) *State* v. *Bozelko*, supra, 119 Conn. App. 509.

"Our analysis of [the defendant's] double jeopardy [claim] does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . Thus, the *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling when a contrary intent is manifest. . . . When the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary." (Citations omitted; internal quotation marks omitted.) *State* v. *Alvaro F.*, supra, 291 Conn. 12–13.

In this case, the first prong of the *Blockburger* test is satisfied because the defendant's conviction of two

counts of attempted first degree robbery arose out of the same act or transaction, which occurred at approximately 3:40 p.m. on June 20, 2008, at the La Quinta Inn at 65 Columbus Boulevard in New Britain. The defendant's claim, however, fails under the second prong of the *Blockburger* test because each robbery offense charged in the information, and of which the defendant was subsequently convicted, requires proof of a fact the other does not. It is therefore axiomatic that the conviction of neither of the two counts of attempt to commit first degree robbery are lesser included offenses of the other.

To convict the defendant of attempt to commit robbery in the first degree under §§ 53a-49 (a) (2) and 53a-134 (a) (1), the state was required to prove, as alleged in count three of the information, that the defendant possessed the requisite mental state and took a substantial step toward committing first degree robbery, and that he or another, during the attempted robbery or flight therefrom, "[c]ause[d] serious physical injury" to a nonparticipant in the crime. To convict the defendant of attempt to commit robbery in the first degree under §§ 53a-49 (a) (2) and 53a-134 (a) (2), the state was required to prove, as alleged in count one of the information, that the defendant possessed the requisite mental state and took a substantial step toward committing first degree robbery, and that he or another, during the attempted robbery or flight therefrom, was "armed with a deadly weapon . . . ." Count three did not require the defendant to use a deadly weapon to cause serious physical injury, and count one did not require that serious physical injury was caused by the defendant being armed with a deadly weapon. Because each of the charged offenses requires proof of an element the other does not, the charges against and subsequent conviction of the defendant of two counts of attempted first degree robbery did not violate the defendant's right not to be

placed twice in jeopardy for the same offense pursuant to the *Blockburger* test.

The defendant is unable to meet his burden demonstrating a clear legislative intent that contradicts the result of the *Blockburger* test. Our Supreme Court has stated that a *Blockburger* test itself "serves as a means of discerning [legislative] purpose . . . ." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, supra, 291 Conn. 12. Further, "the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment . . . ." *State* v. *Greco*, 216 Conn. 282, 295, 579 A.2d 84 (1990); id., 295 n.14, citing General Statutes §§ 53a-56a (a), 53a-59a (b), 53a-60a (a), 53a-60b (b), 53a-60c (b), 53a-61a (b), 53a-70a (a), 53a-72b (a), 53a-92a (a), 53a-94a (a), 53a-102a (a) and 53a-103a (a). Section 53a-134 contains no language indicating the legislature's intent to bar multiple punishments, and the defendant was unable to direct this court to any legislative intent supporting such a conclusion. The defendant's claim, therefore, fails to meet the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.