******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JOSEPH WALKER
## (AC 38916)

Alvord, Sheldon and Mullins, Js.*

*Syllabus*

Convicted, after a jury trial, of several crimes, including robbery and murder, in connection with the shooting death of the victim during a drug transaction, the defendant appealed, claiming, inter alia, that the trial court committed plain error by failing, sua sponte, to instruct the jury on accomplice testimony with respect to the testimony of his coconspirator's girlfriend, B. The defendant claimed that B, who had been charged with tampering with evidence, had been promised lenient treatment by the state in exchange for her testimony, and that she was an accessory after the fact because she assisted in covering up the crimes at issue by cleaning blood from the vehicle in which the shooting occurred and by disposing of evidence of the murder. This court reversed the defendant's conviction in part, holding, inter alia, that he had waived his right to raise his claim of instructional error and, thus, was foreclosed from seeking consideration of it under the plain error doctrine. Thereafter, the defendant, on the granting of certification, appealed to our Supreme Court, which granted the petition and remanded the case to this court for consideration of his claim of plain error. On remand, *held* that the trial court did not commit plain error by failing to deliver, sua sponte, an accomplice instruction concerning B's testimony, as the evidence did not support the conclusion that B aided the defendant in the commission of any of the crimes with which he was charged so as to warrant an accomplice instruction: B was not present when the defendant murdered the victim, there was no testimony or evidence showing that B was involved in the defendant's plan to obtain drugs from the victim, that B had a shared intention with, or intentionally aided, the defendant in any conduct that constituted the crimes committed against the victim, or that B was even aware of the robbery or murder until after those crimes were completed, and the evidence showed that after the commission of those crimes, B acted under duress when she cleaned the vehicle because of threats and orders from the defendant's coconspirator; accordingly, the court's failure to give, sua sponte, an accomplice instruction concerning B's testimony was not an error so plain on its face and obvious in the sense of being not debatable that it undermined the integrity and fairness of the judicial proceeding so as to necessitate a reversal.

Argued September 11—officially released November 28, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of murder, conspiracy to commit murder, felony murder, robbery in the first degree, conspiracy to commit robbery in the first degree and criminal possession of a firearm, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Cremins, J.*; verdict of guilty; thereafter, the court vacated the verdict as to the charge of felony murder; judgment of guilty of murder, conspiracy to commit murder, robbery in the first degree, conspiracy to commit robbery in the first degree and criminal possession of a firearm, from which the defendant appealed; subsequently, this court reversed the judgment in part and remanded the case for further proceedings; thereafter, the defendant filed a petition for certification to appeal with our Supreme Court, which

granted the petition and remanded the case to this court for further proceedings. *Affirmed*.

*Katherine C. Essington*, assigned counsel, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy L. Sedensky* and *Terence D. Mariani*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

MULLINS, J. This case returns to us on remand from our Supreme Court; see *State* v. *Walker*, 325 Conn. 920, 163 A.3d 619 (2017); with direction to consider the claim of plain error raised by the defendant, Joseph Walker. In our previous opinion, we reversed the judgment only with respect to the defendant's conviction of conspiracy to commit robbery in the first degree.[1] *State* v. *Walker*, 169 Conn. App. 794, 812, 153 A.3d 38 (2016), remanded for consideration, 325 Conn. 920, 163 A.3d 619 (2017). We affirmed the judgment in all other respects. Id. As to the defendant's claim that the trial court committed plain error by failing to instruct the jury, sua sponte, on accomplice testimony, we concluded that "[b]ecause the defendant waived his right to raise the present claim of instructional error, he is foreclosed from seeking consideration under the plain error doctrine."[2] Id., 810–11.

Upon granting the defendant's petition for certification to appeal from our previous decision, the Supreme Court has now directed this court to consider the defendant's claim of plain error in light of *State* v. *McClain*, 324 Conn. 802, 155 A.3d 209 (2017), which held that an implied waiver of a claim of instructional error pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), does not preclude an evaluation of that claim under the plain error doctrine. *State* v. *McClain*, supra, 815. After consideration of the defendant's claim, we conclude that plain error does not exist, and, accordingly, we affirm the judgment.

We set forth the relevant factual and procedural history. "On May 10, 2012, the defendant arranged to purchase $6150 worth of cocaine from the victim, David Caban." *State* v. *Walker*, supra, 169 Conn. App. 796. On May 12, 2012, "the defendant, accompanied by his close friend, Solomon Taylor, drove in a white Mitsubishi Gallant (vehicle), which was owned by Taylor's girlfriend, Alexia Bates, to the home of the victim to purchase . . . cocaine." Id., 797. During the transaction, a struggle ensued between the victim and the occupants of the vehicle. Id. "One of the occupants of the vehicle had a revolver, and the victim was attempting to hold his arm in an effort to avoid being shot; that occupant then fired a shot through the roof of the vehicle." Id. More shots were fired and "the victim [was] hit twice, once in the arm and once in the head." Id. The defendant and Taylor "drove away with the rear passenger's side door open and the victim only partially inside of the vehicle." Id., 798. Shortly thereafter, the victim's body was found in the street "[w]ithin approximately one quarter of a mile" from the scene of the shooting. Id. "The victim was transported to Saint Mary's Hospital, where he died from his wounds." Id.

"Meanwhile, the defendant drove to the home of Tay-

lor's girlfriend, Alexia Bates. Upon his arrival, the defendant went upstairs into Bates' apartment and proceeded to go into the bathroom to treat a gunshot wound to his hand, which he had suffered during the struggle with the victim. Taylor, who appeared frantic as he was pacing back and forth, encountered Bates and her roommate in the roommate's bedroom. Taylor then asked Bates to go into her bedroom, which she did. Bates could see blood on Taylor's boxer shorts, which later DNA analysis determined belonged to the victim." Id., 798–99.

"Taylor then ordered Bates to go to her vehicle to retrieve the revolver." Id., 799. Taylor threatened Bates, telling her that she "better do whatever the F he told [her] to do or he was going to F [her] up." After Taylor's threat, Bates went to the vehicle. *State* v. *Walker*, supra, 169 Conn. App. 799. In the vehicle, Bates "saw many different sized pieces of crack cocaine mixed with blood and glass on the floor. She also saw blood on the door, on the front seat, in the middle console, on the dashboard where the airbag is contained, and in the back passenger's seat. She saw broken glass on the floor and on the front seat, and bullet holes in the roof. Bates also discovered the revolver, which she then brought upstairs to Taylor, who put it in his waistband. Taylor then told Bates to gather cleaning supplies to clean the vehicle; Bates grabbed a bucket that she filled with water and 'cleaning stuff,' 'sponges, rags . . . [and] Clorox spray.' She also used a bottle of Febreze that already was in the vehicle." Id. Bates explained that she was afraid of Taylor, because he had a gun and he could have killed her if she called the police.

"Bates also took bags out of the trunk of the vehicle, and she and Taylor then removed all of the items from the inside of the vehicle, which included Bates' makeup, her wallet, her coat, the Febreze bottle, a New York Yankees cap, and other things that she could not remember specifically." Id., 799–800.

"On September 12, 2012, the police arrested the defendant in New York. After a jury trial, the defendant was found guilty of all charges against him. . . . The court sentenced the defendant . . . [to] a total effective sentence of sixty years incarceration, twenty-five years of which were mandatory." Id., 800–801. Additional facts will be set forth as necessary.

The sole question presented on remand is whether the trial court committed plain error by failing to instruct the jury, sua sponte, on accomplice testimony with regard to Bates. The defendant claims that Bates' assistance with the coverup of the crimes, by helping to clean the vehicle, provided a basis for an accomplice instruction. In particular, he argues that Bates' participation in the coverup resulted in her being charged with tampering with evidence, and, therefore, she "had the same motive to curry favor with the prosecution

as an accomplice to the murder." Thus, according to the defendant, the court had a duty to instruct the jury to scrutinize her testimony carefully. We disagree.

We begin by setting forth the legal principles that govern our consideration of this claim. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596–97, 134 A.3d 560 (2016).

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses. . . . [W]here it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if he assisted or aided or abetted in the commission, of the offense with which the defendant is charged. . . . The court's duty to so charge is implicated only where the trial court has before it sufficient evidence to make a determination that there is evidence that the witness was in fact an accomplice." (Citations omitted; emphasis in original; internal quota-

tion marks omitted.) *State* v. *Underwood*, 142 Conn. App. 666, 674–75, 64 A.3d 1274, cert. denied, 310 Conn. 927, 78 A.3d 146 (2013).

"An accomplice is [a] person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense . . . . General Statutes § 53a-8 (a). [I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose with the defendant." (Internal quotation marks omitted.) *State* v. *Underwood*, supra, 142 Conn. App. 675.

In this case, the defendant claims that although "Bates may not have shared an intent as to the murder itself, she had a shared intent and community of purpose with respect to its coverup." Essentially, the defendant argues that Bates was an accessory after the fact, and, therefore, the court committed plain error by failing to instruct the jury, sua sponte, on accomplice testimony with respect to her testimony.[3] In support of this contention, the defendant directs this court to Bates' testimony that when "she lent her [vehicle] to her boyfriend . . . Taylor, prior to the drug deal that led to the shooting, she knew Taylor was a drug dealer and had seen him with a gun, and she helped clean the [vehicle] of blood and dispose of the evidence of the murder afterward." The defendant also posits that Bates was "charged with offenses based on the same set of facts that led to the charges against Taylor and [the defendant], and . . . the state had promised her lenient treatment in her pending case in exchange for her testimony."[4] According to the defendant, this evidence was sufficient to implicate the court's duty to provide an accomplice testimony instruction with regard to Bates. We disagree. These circumstances do not support a determination that Bates was an accomplice such that the court was required to give, sua sponte, an accomplice instruction.

First, Bates was not with the defendant when he murdered the victim. Indeed, there was no testimony from the defendant or any other witness that attributed any involvement by Bates in the defendant's plan to obtain drugs from the victim. There also was no evidence that Bates had any shared intention with the defendant to commit any crimes against the victim once the defendant encountered the victim. Second, there was no evidence showing that Bates intentionally aided the defendant in any conduct that constituted the crimes against the victim, i.e., robbery or murder. In fact, there was no evidence that Bates even was aware of the robbery or the murder until the defendant and his coconspirator returned to her residence after completing those crimes.

The evidence shows that once the defendant and Taylor returned to Bates' home, although Bates helped

to clean the vehicle, she did not do so voluntarily. The evidence shows that Taylor threatened her, by telling her he would "F her up if she did not do whatever the F he wanted her to do" and then he ordered her to clean the vehicle. As a result, Bates testified, she cleaned the bloody vehicle because she was afraid of Taylor. She explained that she feared him because he had a gun and could have killed her if she called the police. Thus, the evidence did not show Bates to be a willing participant but, rather, it showed that Taylor threatened Bates in order to make sure that she would do what he told her to do.

Given that Bates was not present at the crime scene, was not a participant in the crimes with which the defendant was charged, was not aware of the commission of the crimes prior to or during their commission, only helped to clean the bloody vehicle under duress, and only after the crimes already had been completed, she clearly did not have the mutuality of intent or community of unlawful purpose to commit the robbery and murder the victim. Accordingly, Bates was not charged with the same crimes as the defendant or as a coconspirator. Instead, Bates was charged with tampering with evidence. See *State* v. *Underwood*, supra, 142 Conn. App. 677–78 (evidence did not support conclusion that witness was accomplice despite witness having been charged with tampering with evidence for disposing of gun used by defendant because witness did not have mutual intent or community of unlawful purpose with defendant to commit crimes against victim). Put simply, the evidence did not support the conclusion that Bates aided the defendant in the commission of any of the crimes with which he was charged; therefore, an accomplice instruction was not warranted here. Cf. *State* v. *Bree*, 136 Conn. App. 1, 19–20, 43 A.3d 793 (accomplice instruction warranted where witness was named as coconspirator and there was "substantial evidence tending to show that he aided or abetted" commission of charged crime), cert. denied, 305 Conn. 926, 47 A.3d 885 (2012).

Further, we find our Supreme Court's decision in *State* v. *Boles*, 223 Conn. 535, 613 A.2d 770 (1992), particularly instructive. In *Boles*, the defendant claimed that the court committed plain error by not delivering, sua sponte, an accomplice instruction to the jury regarding a particular witness. In that case, the witness was present when the defendant killed the victim, and he assisted the defendant in disposing of the victim's body. Id., 551. The witness testified that he acted under duress because the defendant threatened to kill him if he did not assist with moving the victim's body. Id., 539. Our Supreme Court ruled that the trial court reasonably could have found that the evidence "did not indicate mutuality of intent and community of unlawful purpose or that the evidence thereof was so insufficient, inconclusive or ambivalent that an accomplice instruction

was not appropriate." Id., 552. The court further concluded that "the omission of an accomplice instruction in the court's charge to the jury, if misguided, was not so obvious or egregious that it merits plain error review." Id.

In light of *Boles*, the facts of the present case provide an even stronger basis for this court to conclude that no error arose from the trial court's failure to deliver, sua sponte, an accomplice instruction with respect to Bates' testimony. First, unlike the witness in *Boles*, Bates was not present at the crime scene during the commission of the crimes. Therefore, it is much clearer in this case that Bates was not an active participant in the robbery and murder of the victim. Second, there was evidence that Bates, like the witness in *Boles*, acted under duress in helping to clean the vehicle after the commission of the crimes as a result of Taylor's threats and orders that she do so. Consequently, it is not at all clear that Bates willingly assisted in a coverup by cleaning the vehicle.

Thus, here, as in *Boles*, the evidence adduced at trial did not so clearly support the conclusion that Bates was an accomplice that it was plain error for the trial court not to deliver, sua sponte, a special credibility instruction. See id., 552. On the contrary, on the basis of the evidence before it, the trial court's failure to give an accomplice instruction concerning Bates' testimony would not have been improper even if the defendant had requested such an instruction. Accordingly, the court's failure to give, sua sponte, an accomplice instruction was not "so clearly and obviously an error that it undermines the integrity and fairness of the judicial proceeding necessitating reversal." *State* v. *McClain*, supra, 324 Conn. 820–21.

Under these circumstances, we conclude that the omission of an accomplice instruction was not an error, much less an error so plain on its face and obvious in the sense of being not debatable. Consequently, the defendant's claim fails to meet the high standard of the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In addition to the conspiracy charge, the defendant also was convicted of murder in violation of General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1).

[2] We declined the defendant's request that we exercise our supervisory authority over the administration of justice to review his claim of instructional error. See *State* v. *Walker*, supra, 169 Conn. App. 811–12 ("although the defendant asserts that we should adopt a rule that requires the trial court to give a special credibility instruction in cases where a state's witness has been promised a benefit in exchange for his or her testimony, our Supreme Court already has rejected such a request").

[3] The defendant fails to cite, and the court is unable to find, any Connecti-

cut authority to support the proposition that an accomplice instruction is required for an accessory after the fact.

[4] Although there was an agreement between the prosecution and Bates that provided for leniency with regard to the pending charge of tampering with evidence, there is no requirement that the trial court issue a special credibility instruction for every witness who is in a position to receive a benefit for their testimony. See *State* v. *Diaz*, 302 Conn. 93, 100 n.5, 25 A.3d 594 (2011) (declining request to require trial courts to give special credibility instruction whenever witness in criminal case is in position to receive benefit from state in exchange for testifying).

———————————————————