******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ISABEL MODAFFARI *v.* GREENWICH HOSPITAL
(AC 36444)
(AC 36555)

Alvord, Keller and Harper, Js.

*Argued March 3—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Edward F. Stodolink, judge trial referee.)

*John T. Bochanis*, for the appellant (plaintiff).

*David S. Poppick*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Isabel Modaffari, appeals from the judgment of the trial court rendered in favor of the defendant, Greenwich Hospital. She claims that the court erred by denying her oral motion for a mistrial that was based on a witness' improper statement regarding a polygraph examination, elicited by an improper question posed by the defendant. The court struck the statement from the record and instructed the jury to ignore it. We affirm the judgment of the court.

The following facts, which a jury reasonably could have found, and procedural history are relevant here. The plaintiff was employed by the defendant, Greenwich Hospital, as a phlebotomist from December 13, 2004 to January 20, 2012. On or about May 29, 2011, during the course of her employment, she drew three blood samples from a patient at the defendant's facilities. Each blood sample was collected in a separate vial for storage. After collecting the blood samples in the vials, the plaintiff noticed that the blood samples appeared to be light pink in color. The plaintiff testified that the blood samples should have appeared dark red or cherry red in color. She then inspected the remainder of her unused vials and discovered that a number of them contained an unknown clear liquid, indicating that the vials were contaminated. Later that day, she informed one of her supervisors, Edmund Simon, of the incident. Two days later, the plaintiff gave the three contaminated vials to another one of her supervisors, Brian Runyon.

On June 3, 2011, as a result of the incident concerning the blood samples, the Federal Bureau of Investigation (FBI) began conducting an investigation to determine whether there was a threat to public safety at the defendant's facilities and interviewed numerous individuals employed by the defendant, including the plaintiff. The FBI concluded that the incident did not warrant further inquiry and closed its investigation in December, 2011. At the FBI's request, another federal agency, the Food and Drug Administration (FDA), began conducting a separate investigation in June, 2011, to determine whether there was evidence of product tampering at the defendant's facilities and interviewed, among other individuals, the plaintiff. The FDA ultimately closed its investigation. On January 20, 2012, the plaintiff quit her job.

On August 1, 2012, the plaintiff filed a complaint alleging, inter alia, that the defendant had constructively discharged her from her employment as a result of her cooperation with the federal investigations and, consequently, had violated General Statutes § 31-51q.[1] In support of her allegations, she asserted that, after she cooperated with the FBI and FDA investigations, the defendant harassed her, humiliated her, and failed

to compensate her fully for her employment. The defendant filed an answer denying these allegations and presented a number of affirmative defenses.

The parties presented evidence to a jury from December 10 to December 18, 2013. In support of her allegation that the defendant had constructively discharged her, the plaintiff testified that following the investigations she no longer felt safe working for the defendant and did not believe that the defendant was providing proper medical treatment to its patients. Furthermore, she testified that Simon sent her into a room with the defendant's vice president, Quinton Friesen, who had ordered her not to speak with the FBI about the blood samples tampering incident. She felt that, as a result of her cooperation with the FBI and FDA investigations, her supervisors constantly yelled at her and humiliated her, and the defendant failed to pay the full overtime salary that it owed her.

During trial, the defendant called as a witness Matthew Comerford, an agent from the FDA's Office of Criminal Investigations, who had interviewed the plaintiff in the course of his investigation on behalf of the FDA. During direct examination, the defendant elicited testimony from Comerford regarding a polygraph examination undergone by Jason Wein, one of the plaintiff's former coworkers during her employment with the defendant. The following exchange occurred in the presence of the jury:

"[The Defendant's Counsel]: And did [Wein] take a polygraph exam?

"[Comerford]: Yes, he did.

"[The Defendant's Counsel]: What was the result of the polygraph exam?

"[The Plaintiff's Counsel]: I'll object, Your Honor.

"The Court: I'll sustain the objection.

"[Comerford]: He passed the polygraph.

"The Court: No. No.

"[Comerford]: I'm sorry, Your Honor.

"The Court: I sustained the objection.

"[The Defendant's Counsel]: I know I heard that, judge.

"[The Plaintiff's Counsel]: I ask that it be stricken, Your Honor, and I think—could we approach?

"The Court: I didn't hear. Was there an answer?

"[The Plaintiff's Counsel]: Yes.

"The Court: I'll strike the answer and instruct the jury to disregard."

On December 11, 2013, after the proceedings were suspended for the day and the jury left the courtroom,

the plaintiff orally moved for a mistrial. In support of her motion, the plaintiff argued that the defendant's question regarding the results of Wein's polygraph examination and Comerford's statement in response to that question were highly prejudicial and warranted a mistrial. Specifically, according to the plaintiff, the defendant's question and Comerford's statement were prejudicial because she testified that she had previously witnessed Wein tampering with vials used for the collection of blood samples. She contended that the defendant's question and Comerford's statement indicating that Wein passed a polygraph examination suggested that Wein did not tamper with the vials and, consequently, undermined her credibility. Although she acknowledged that the court sustained her objection to the defendant's question, struck Comerford's statement from the record, and instructed the jury to disregard the statement, she argued that no corrective action by the court could cure the prejudice she had sustained. The court orally denied her motion.

On December 19, 2013, the jury returned a verdict for the defendant. On January 2, 2014, the plaintiff filed a motion to set aside the verdict, which the court denied. This appeal, in which she challenges the court's denial of her motion for a mistrial, followed.[2] Additional facts will be set forth as necessary.

We begin by setting forth the relevant standard of review. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the [plaintiff] and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 638–39, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009). "On appeal, the [plaintiff] bears the burden of establishing that there was irreparable prejudice to the [plaintiff's] case such that it denied [her] a fair trial. . . . In determining whether the [plaintiff] was deprived of [her] right to a fair trial, [e]very reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced [the plaintiff]. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Luther*, 114 Conn.

App. 799, 805–806, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009).

The plaintiff claims that the defendant's question concerning the results of Wein's polygraph examination and Comerford's statement in response to that question, which the court struck from the record and instructed the jury to ignore, were so prejudicial as to warrant a mistrial. Reiterating in substance the argument she presented to the court on her motion for a mistrial, she contends that Comerford's statement improperly suggested that Wein did not tamper with any vials, contradicting her testimony indicating otherwise and undermining her credibility. In support of her claim, she recounts the rationale underlying the per se inadmissibility of polygraph evidence in Connecticut courts. See *State* v. *Porter*, 241 Conn. 57, 93–94, 698 A.2d 739 (1997) (concluding polygraph evidence is per se inadmissible in Connecticut courts where rules of evidence apply), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). According to the plaintiff, because our case law expressly provides that polygraph evidence has little probative value and is highly prejudicial, she suffered irreparable prejudice the moment the jury heard Comerford's statement in response to the defendant's question regarding the results of Wein's polygraph examination. We disagree.

Although we agree that the defendant's question regarding the results of Wein's polygraph examination and Comerford's statement in response to that question were improper, we conclude, on the basis of several factors, that the plaintiff has failed to meet her burden to prove that she was so prejudiced by those improprieties that she failed to receive a fair trial. The court immediately sustained the plaintiff's objection to the defendant's question and struck Comerford's statement from the record.[3] Those improprieties constituted a single, isolated event, and the defendant did not subsequently attempt to revisit the issue of Wein's polygraph examination at trial. Furthermore, after it struck Comerford's statement from the record, the court provided the jury with a curative instruction to disregard the statement. "It is well settled that the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary. . . . Thus, [a] jury is normally presumed to disregard inadmissible evidence brought to its attention unless there is an overwhelming probability that the jury will not follow the trial court's instructions and a strong likelihood that the inadmissible evidence was devastating to the [plaintiff]." (Internal quotation marks omitted.) See *State* v. *Bree*, 136 Conn. App. 1, 15, 43 A.3d 793, cert. denied, 305 Conn. 926, 47 A.3d 885 (2012). Here, the plaintiff has not met her burden to rebut the presumption that the jury followed the court's curative instruction to disregard Comerford's statement.

In addition, insofar as the plaintiff claims that the defendant's question and Comerford's statement in response to that question substantially damaged her credibility, the jury had ample evidence, apart from the question and statement in the record, that undermined the plaintiff's credibility. As a result, any prejudice she had sustained was minimized. See id., 14–16 (affirming denial of motion for mistrial where court provided jury with curative instructions for stricken statements and other evidence provided basis for jury to reach relevant conclusion). At trial, a number of witnesses provided testimony that implicated the plaintiff's credibility. First, Simon testified that, on June 3, 2011, he did not order the plaintiff to enter a room in the defendant's phlebotomy department in order to speak with Friesen. Simon's testimony contradicted the plaintiff's testimony that Simon had told her to go into a room and speak with Friesen that day.

Second, Friesen testified that, on June 3, 2011, he did not meet with the plaintiff and order her not to speak with the FBI about the blood samples tampering incident. Friesen's testimony contradicted the plaintiff's testimony that he had met with her and ordered her not to speak with the FBI about the incident that day.

Third, Comerford testified that the plaintiff had failed to cooperate with him in scheduling a date for her to undergo a polygraph examination. According to Comerford's testimony, on July 20, 2011, the plaintiff told him that she would contact him after she returned from a vacation to schedule a date for a polygraph examination. He subsequently had between fifteen and twenty telephone conversations with an attorney for the plaintiff about scheduling the date. Comerford's testimony contradicted the plaintiff's testimony that, prior to leaving for vacation, Comerford told her that he would contact her to schedule a date for a polygraph examination and never contacted her thereafter.[4]

The plaintiff also suggests that she was prejudiced by the court's failure to provide additional curative instructions to the jury regarding its obligation to disregard statements that are stricken from the record. "We are mindful that curative instructions are not a cure-all for every improper event that may transpire during a trial. . . . The likely effectiveness of such a remedy is dependent on the magnitude of the impropriety to which it is directed." (Internal quotation marks omitted.) *Camacho* v. *Commissioner of Correction*, 148 Conn. App. 488, 502, 84 A.3d 1246, cert. denied, 311 Conn. 937, 88 A.3d 1227 (2014). Here, given the isolated nature of the defendant's question and Comerford's statement in response to that question, we are satisfied that the court's curative instruction was sufficient to mitigate any prejudice the plaintiff sustained and, therefore, the lack of additional instructions did not harm her.

Furthermore, insofar as she suggests that additional curative instructions would have mitigated the prejudice she had suffered by the defendant's question and Comerford's statement, her argument contradicts the argument she presented before the trial court. She did not ask the court during trial to provide additional curative instructions regarding the jury's obligation to disregard stricken statements. Instead, she repeatedly stated that curative instructions would not remedy the alleged prejudice she had suffered. The plaintiff's counsel made the following direct statement to the court: "I don't see how any curative instruction can surmount the prejudice created by the result of a polygraph exam by the one person that gave it." The plaintiff also indicated to the court that she would have suffered further prejudice had the court given the jury additional curative instructions regarding Comerford's stricken statement. We are not persuaded by the plaintiff's inconsistent argument, and we consider it improper for her to present one argument at trial and a contrary argument on appeal.[5]

For the foregoing reasons, we conclude that the plaintiff failed to meet her burden to prove that the court's denial of her motion for a mistrial constituted an abuse of its broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 31-51q provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

[2] Prior to the court's denial of her motion to set aside the verdict, the plaintiff filed an appeal to this court. On her appeal form, she indicated that she was appealing from the court's judgment rendered in favor of the defendant and its denial of her motion for a mistrial. After the court denied her motion to set aside the verdict, she filed another appeal to this court. On the second appeal form, she indicated that she was appealing from the court's judgment rendered in favor of the defendant, its denial of her motion for a mistrial and its denial of her motion to set aside the verdict. This court consolidated the appeals sua sponte. In her appellate brief, the plaintiff challenges the judgment rendered in favor of the defendant solely on the basis of her claim that the court erred by denying her motion for a mistrial and, therefore, we deem any claims regarding the denial of the motion to set aside the verdict abandoned. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 234–35, 90 A.3d 998 (2014).

[3] Specifically, the court stated: "I'll strike the answer and instruct the jury to disregard."

[4] We note that the plaintiff was the first witness to introduce testimony concerning polygraph examinations. On direct examination during her case-in-chief, she testified that, when asked by Comerford and Michael Syrax, an agent for the FBI, whether she was willing to undergo a polygraph examination, she replied, " 'absolutely, I will do the polygraph whenever you want.' "

In addition, even if Comerford had never stated that Wein had passed his

polygraph examination, the jury had sufficient evidence before it, apart from the question and answer at issue in the present claim, to draw that inference. This is because the plaintiff did not object either to the defendant's question to Comerford asking whether Wein had undergone a polygraph examination or to Comerford's testimony that Wein did submit to a polygraph examination. Furthermore, there was evidence before the jury that the federal investigations regarding the blood samples tampering incident had been closed, but there was no evidence, aside from the plaintiff's testimony, to support a finding that Wein had tampered with the blood vials. Therefore, the jury reasonably could have inferred that Wein had passed his polygraph examination because there was evidence that Wein had undergone a polygraph examination, the federal investigations apparently had been resolved without any repercussions against Wein, and, aside from the plaintiff's testimony, there was no evidence connecting Wein to the blood samples tampering incident.

[5] Although we do not view the plaintiff's argument as an independent claim that she failed to raise before the trial court, we note that this court has denied review of claims that parties did not properly raise to the trial court. See, e.g., *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 620, 64 A.3d 1251 (2013) ("Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path [she] rejected should now be open to [her]. . . . To rule otherwise would permit trial by ambuscade." [Internal quotation marks omitted.]).

---